The STATE of Ohio, Appellee,

v.

DAVIS, Appellant.

[Cite as *State v. Davis* (1989), 64 Ohio App.3d 334.]

Court of Appeals of Ohio,
Preble County.

No. CA88–09–017.

Decided Dec. 29, 1989.

336

*Wilfrid G. Dues,* Prosecuting Attorney, and *Rebecca J. Ferguson,* for appellee.

*John H. Rion & Associates* and *John H. Rion,* for appellant.

KOEHLER, Judge.

In March 1988, the then fourteen-year-old daughter of defendant-appellant, Michael T. Davis, confided in school friends that she had been sexually attacked and molested by her father. These conversations were reported to a high school guidance counselor who contacted the Preble County Children's Services Department to initiate an investigation of the allegations.

Appellant was subsequently indicted on two counts of rape per R.C. 2907.02(A)(2) and two counts of sexual battery per R.C. 2907.03(A)(5). After a trial by jury held in the Preble County Court of Common Pleas on August 22 through August 23, 1988, appellant was found guilty as charged. Appellant thereafter timely filed a notice of appeal to this court and now submits the following two assignments of error for our consideration.

### First Assignment of Error

"The inclusion of prejudicially extraneous testimony denied appellant a fair trial as guaranteed him by the due process clause of the Fourteenth Amendment of the United States Constitution and Article I, Section 10 of the Ohio Constitution."

### Second Assignment of Error

"Appellant was denied a fair trial by the admission of expert opinions in areas in which the witness was not qualified as an expert nor permitted by law to testify."

It is alleged that on an occasion in either August or September 1987, appellant entered his daughter's bedroom and forced her to perform fellatio. A second incident was alleged to have occurred in March 1988 while appellant's daughter was alone in her room. On this occasion, appellant fondled his daughter before and during vaginal intercourse and proceeded to ejaculate inside her. The daughter's original version of this incident related that the act took place while a friend of her father's also fondled her and watched while her father had forced sexual intercourse with her. However, she later acknowledged that she had fabricated the presence and participation of another person during the incident. No physical examination of appellant's daughter was performed. It was believed the time lag from the incident to the examination would preclude discovery of any sign of sexual or physical abuse.

In his first assignment of error, appellant asserts that testimony from prosecution witnesses concerning other crimes, wrongs, or acts independent of the indicted offense are not properly admissible pursuant to the Ohio Rules of Evidence and R.C. 2907.02(D). At trial, testimony was presented as to intrafamily relations and the constant use of physical discipline by appellant. Additionally, testimony concerning the two incidents of alleged sexual battery and rape between appellant and his daughter were admitted at trial, as well as evidence of alleged continual sexual contact between the parties over a two-year period.

R.C. 2907.02(D) sets forth the limited admissibility of a defendant's sexual activity as follows:

" * * * Evidence of specific instances of the defendant's sexual activity, opinion evidence of the defendant's sexual activity, and reputation evidence of the defendant's sexual activity shall not be admitted under this section unless it involves evidence of the origin of semen, pregnancy, or disease, the defendant's past sexual activity with the victim, or is admissible against the defendant under section 2945.59 of the Revised Code, and only to the extent

that the court finds that the evidence is material to a fact at issue in the case and that its inflammatory or prejudicial nature does not outweigh its probative value."

R.C. 2945.59 maintains:

"In any criminal case in which the defendant's motive or intent, the absence of mistake or accident on his part, or the *defendant's scheme, plan, or system* in doing an act is material, any acts of the defendant which tend to show his motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system in doing the act in question may be proved, whether they are contemporaneous with or prior or subsequent thereto, notwithstanding that such proof may show or tend to show the commission of another crime by the defendant." (Emphasis added.)

■ Therefore, under Ohio's "rape shield law," evidence of specific instances of the defendant's sexual activity, opinion evidence of the defendant's sexual activity, and reputation evidence of the defendant's sexual activity are proscribed unless they involve evidence of the origin of semen, pregnancy, or disease, the defendant's past sexual activity with the victim, or are admissible under R.C. 2945.59.

■ Testimony received at trial concerning prior sexual contact between appellant and his daughter is relevant and material in the present case since such conduct constitutes, in part, those alleged acts which form the foundation of the crime as charged. This evidence of prior sexual history is not collateral evidence introduced to impeach the character of appellant or to show that appellant has the tendency to engage in crimes of this magnitude. Instead, the allegation of continual sexual abuse during a two-year period of time is the basis of the crime as charged, thereby requiring this testimony to be admitted. See *State v. Curry* (1975), 43 Ohio St.2d 66, 72 O.O.2d 37, 330 N.E.2d 720; R.C. 2907.02(D); R.C. 2945.59.

■ The "other act testimony" elicited at trial by the prosecution from witnesses concerning the drinking behavior and temperament of appellant was utilized to prove that appellant had a character trait or propensity to commit the indicted crimes of rape and sexual battery, rather than for the purpose of showing a scheme, plan, or system of conduct. See Evid.R. 404(B).

■ It is a well-established rule of evidence that the prosecution in a criminal trial may not present evidence that a defendant has committed other crimes, wrongs or acts *independent* of the offense for which he is on trial in order to demonstrate that the defendant has a propensity for crime or that his character is in conformity with the other acts. Evid.R. 404(B); *State v. Mann* (1985), 19 Ohio St.3d 34, 19 OBR 28, 482 N.E.2d 592. Therefore, evidence of

previous or subsequent criminal or quasi-criminal acts, wholly independent of the offense for which defendant is charged, is inadmissible at trial. *Whiteman v. State* (1928), 119 Ohio St. 285, 164 N.E. 51; *State v. Hector* (1969), 19 Ohio St.2d 167, 48 O.O.2d 199, 249 N.E.2d 912.

■ However, evidence of other crimes or wrongs may be admitted when such acts are so inextricably intertwined with the crime as charged that proof of one involves the other, explains the circumstances thereof, or tends logically to prove any element of the crime charged. *State v. Wilkinson* (1980), 64 Ohio St.2d 308, 317, 18 O.O.3d 482, 488, 415 N.E.2d 261, 269.

In the case *sub judice*, we are convinced that the prosecution improperly elicited "other act" testimony in order to show defendant had a character trait or propensity to commit the crimes as charged, which is strictly forbidden pursuant to Evid.R. 404(B). Further, appellant did not place his character in issue by having character or reputation witnesses testify as to his "good character," which would have justified the prosecution's use of the prior bad acts.

In *Curry, supra,* the Ohio Supreme Court held that "other act" testimony in order to be admissible under the scheme or plan exception, must: (1) illustrate the immediate background of the crime charged, such that without this testimony it would be virtually impossible to prove that the accused committed the crime; or (2) establish the identity of the perpetrator. On both counts, this "other act" testimony fails to be relevant and material to the indicted charges of rape and sexual battery.

The prosecution improperly introduced "other act" testimony for the purpose of proving a character trait or propensity of appellant to commit the charged crimes. To this end, appellant was accused of having a drinking problem and being unable to keep steady employment. Further, the record also reveals that the prosecution painted appellant as a child abuser who was disliked by his daughters. Clearly, the total cumulative effect of this unwarranted and improper testimony severely prejudiced appellant. The use of "other act" testimony, elicited by the prosecution, amounts to prejudicial error requiring this court to grant appellant the opportunity for a new trial. Accordingly, appellant's first assignment of error is well taken.

Appellant's second assignment of error maintains that clinical counselor Barbara Evans should not have been permitted to testify as to whether, in her opinion, appellant's daughter was a sexually abused child. At trial, Evans testified that she felt, based upon her training, experience, and interviews, that the child had been sexually abused. Furthermore, initial falsities about the alleged sexual abuse were deemed by this expert to be common and ordinary in approximately ninety-eight percent of cases. Appellant contends

that Evans's testimony should not have been admitted at trial since such testimony amounted to no more than Evans's judgment of the credibility of the complaining witness, which, according to appellant, is not a proper subject for expert testimony.

Evid.R. 702 provides that:

"If scientific, technical, or other specialized knowledge will *assist the trier of fact* to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise." (Emphasis added.)

■ Therefore, in order for expert testimony to be properly admissible, the testimony must satisfy two requirements: the witness must be qualified as an expert by the trial court and the testimony must be such that it is helpful to the trier of fact for purposes of understanding other evidence or making a determination of a fact in issue.

■ The determination as to whether a given witness is qualified to testify as an expert witness is a matter relegated to the sound discretion of the trial court. *State v. Maupin* (1975), 42 Ohio St.2d 473, 71 O.O.2d 485, 330 N.E.2d 708. Once the court determines that a witness is so qualified, the decision is not subject to reversal on appeal unless an abuse of discretion is demonstrated. *Maupin, supra.*

■ The record before us indicates that Evans, in addition to both bachelor's and master's degrees in psychology, has a total of twenty-two years of work experience in the field of psychology. For the past five years, Evans has been a counselor with the Preble County Counseling Service dealing specifically with sexual abuse cases. In addition to numerous workshops on the subject of child abuse, Evans testified that she has personally counseled approximately one hundred twenty-five abused children with seventy-five occurring in the last four years. These qualifications appear to us to be sufficient to support the trial court's finding that Evans was qualified to testify as an expert in the area of child abuse. We therefore conclude that the trial court did not abuse its discretion in this regard.

The determination as to whether a given subject is a proper matter for expert testimony turns on whether the testimony will " * * * assist the trier of fact to understand the evidence or to determine a fact in issue * * *." Evid.R. 702. The Ohio Supreme Court has held that expert testimony is admissible at trial: (1) where the evidence is relevant and material to the issue in the case; (2) where the subject of the expert testimony is not within the understanding of the jury; (3) where the theory relied upon by the expert is

commonly accepted in the scientific community; and (4) its probative value outweighs its prejudicial impact. See *State v. Thomas* (1981), 66 Ohio St.2d 518, 20 O.O.3d 424, 423 N.E.2d 137; *State v. Garfield* (1986), 34 Ohio App.3d 300, 518 N.E.2d 568.

The subject of the expert testimony at issue herein was whether or not the complaining witness had been sexually abused. Based on her interviews and counseling sessions with appellant's daughter, Evans testified that the child suffered from "sexually abused child syndrome." In addition, this expert witness, in response to apparent falsehoods from the complaining witness, insisted that a therapist looks for such misrepresentations concluding that in ninety-eight percent of all cases a sexually abused child will fabricate a story. Therefore, Evans not only gave her opinion as to whether appellant's daughter was a "sexually abused child," but also furnished additional information concerning the veracity of the victim-witness.

The record in this matter does not reveal the existence of any direct and/or demonstrative evidence of sexual abuse. No physical or medical evidence corroborated the accusations of rape and sexual battery against appellant. Therefore, the prosecution, by using psychological theories, attempted in this case to show that sexual abuse occurred through the behavioral manifestations of the alleged victim.

The accessory sex syndrome or child sexual abuse accommodation syndrome ("CSAAS") identifies certain characteristics which frequently appear in child abuse victims; however, this by no means proves whether or not a child has in fact been a victim of sexual abuse.[1] In effect, CSAAS does not diagnose or detect sexual abuse, but instead, *assumes* the presence of such abuse and seeks to explain the child's reaction to it. Therefore, the term "syndrome" is a misnomer since symptoms or traits cannot by themselves be used as a test for sexual abuse, for the simple reason that CSAAS is not probative of sexual abuse.

■ We submit that CSAAS fails to scientifically set forth definitive standards for determining whether a child has in fact been abused. However, certain factors have been alleged to indicate that abuse has taken place: (1) consistency in recounting the molestation to different people; (2) denying the molestation occurred; (3) sexual knowledge beyond that usually associated with the victim's age; (4) the ability to recall the molestation over an extended period of time; (5) a feeling of loss of control over one's life; (6) depression or

---

1. See Summit, The Child Sexual Abuse Accommodation Syndrome (1983), 7 Child Abuse and Neglect 177.

anger; (7) sleep or eating disorders; (8) false sense of maturity; and (9) disturbed relationships.[2]

The foregoing is not an exhaustive list of various symptoms claimed by a number of mental health professionals to show that sexual abuse has occurred. These symptoms, however, are not exclusively the domain of a child who has been sexually abused. In fact, many of these behavioral traits may be a result of other psychological and behavioral disorders.

The prosecution through the use of "syndrome" testimony sought to establish on the basis of present conduct that, in part, appellant's daughter has been subject to specific sexual trauma. We hold that the record fails to demonstrate the scientific reliability of such evidence.

 The clinical experience of a counselor or psychologist alone cannot justify the admission of "expert testimony" based on professional observation, without a solid empirical foundation. See *State v. Black* (Me.1988), 537 A.2d 1154.[3] Scientific reliability and validity is of focal importance for the admission of "syndrome" testimony due to its powerful, persuasive effect on a jury.

 In the present case, Evans did not lay a proper scientific foundation for her conclusions that appellant's daughter was a sexually abused child. It has not been demonstrated with sufficient accuracy that a causal relationship even exists between a condition of sexual abuse and the alleged "symptoms of sexual abuse." Therefore, to permit a jury to rely on an unproven, scientific technique to bolster uncorroborated child testimony deprives a criminal defendant of a fair trial. See *State v. Lawrence* (Me.1988), 541 A.2d 1291.

In *People v. Bledsoe* (1984), 36 Cal.3d 236, 203 Cal.Rptr. 450, 681 P.2d 291, the Supreme Court of California addressed the admissibility of evidence concerning the "rape trauma syndrome." The prosecution elicited testimony from a rape counselor describing the syndrome as an "acute stress reaction to trauma" and explained three psychological phases of the syndrome. The court rejected this use of the "rape trauma syndrome" to prove that the victim

---

2. See Summit, *supra;* Boresi, Syndrome Testimony in Child Abuse Prosecutions: The Wave of the Future (1989), 8 St. Louis U.Pub.Law Rev. 207.

3. In *Black, supra,* the defendant was charged with gross sexual misconduct. The prosecution elicited testimony from a psychiatric nurse who described certain "indicators" frequently encountered in sexually abused children. These "clinical features of sexual abuse" were then relied upon by the expert to state that the child in question was a victim of past sexual abuse. The Supreme Judicial Court of Maine held that the validity of the summary of symptoms encountered in the population of her patients was seriously impaired by selection bias. The court further stated that the testimony demonstrated no scientific basis for determining that a causal link existed between sexual abuse and the clinical features of sexual abuse, nor was there a positive correlation between the two. Therefore, the court rejected this expert testimony due to a lack of solid, scientific, empirical reliability.

was in fact raped since the syndrome was devised as a therapeutic tool and not as a means of determining whether a rape actually occurred. See, also, *In re Sara M.* (1987), 194 Cal.App.3d 585, 239 Cal.Rptr. 605.

In a case factually similar to the present action, a California appellate court held that it was error to allow a psychologist to testify on CSAAS. *People v. Bowker* (1988), 203 Cal.App.3d 385, 249 Cal.Rptr. 886.[4] The court in *Bowker,* relying on *Bledsoe, supra,* rejected the use of syndrome testimony as a predictor of child sexual abuse since the jury is led astray thereby abdicating its fact-finding responsibility. *Bowker, supra,* 203 Cal.App.3d at 394–395, 249 Cal.Rptr. at 891–892.[5]

It is quite apparent to us that the "syndrome" was developed as a therapeutic aid, not a truth-seeking procedure and, therefore, its use to factually determine whether one has been sexually abused is flawed since the syndrome in the first instance assumes that the child has been molested.

Evans in the instant action testified that certain observable behavioral patterns are consistent with sexual abuse: (1) failure at school; (2) lack of social interactions; (3) anger; (4) lying; (5) "abnormal" conduct; (6) avoidance; and (7) emotional regression. However, this expert failed to indicate which symptoms appellant's daughter manifested, solely relying on her account of the events to state that she suffered from the "child sexual abuse syndrome."

■■■ The lower court permitted the prosecution to elicit testimony on behavioral peculiarities which may or may not be exhibited by a sexually

---

**4.** The *Bowker* court was greatly influenced by the test enunciated in *Frye v. United States* (D.C.Cir.1923), 293 F. 1013, regarding the use of new scientific techniques and principles. In connection with the jury's obligation to resolve factual disputes, the court held that the "child sexual abuse accommodation syndrome" is an unproven and unacceptable scientific technique and, therefore, it cannot without other direct and physical evidence establish the guilt of an accused defendant. See *Bowker, supra,* 203 Cal.App.3d at 391–393, 249 Cal.Rptr. at 889–891.

**5.** In *Bowker, supra,* the defendant was charged with having lewd and lascivious acts with a child under fourteen years of age. The prosecution produced expert testimony concerning the "child sexual abuse accommodation syndrome." Defendant objected to such testimony as irrelevant and prejudicial. The trial court ruled that testimony on the syndrome would be admissible if limited to child sexual abuse victims as a class and only if the victim's credibility was questioned. Subsequently, the expert testified at great length on the syndrome and stated that while children may give inconsistent versions of what happened to them, inconsistency is commonplace and should not invalidate a child's response.

The appellate court held that the syndrome was developed as a therapeutic tool and, therefore, could not be accurately used to determine whether a child had been abused. Further, the court concluded that the lack of proper scientific reliability precludes testimony that a victim's account is credible because he or she manifests certain defined characteristics generally exhibited by abused children.

abused child, in its case in chief. Further, the court allowed Evans to bolster the victim's credibility by stating "[t]hat is 98% of the children do this, and so that's one of the things that makes her credible. The fact that the story changes." Clearly, allowing an expert to comment on the credibility of another witness in percentage form infringes on the jury's function, and is a backdoor way of stating that the victim-witness is "telling the truth."

Even assuming that the "child sexual abuse syndrome" has a proper scientific and empirical foundation does not justify its use in the present case. Evans was permitted under the guise of this syndrome to render an opinion concerning the credibility of the victim's testimony. In fact, in this case, any expert testimony concluding that the victim was sexually abused would be improper since the victim was otherwise articulate and competent to testify concerning the alleged events of her "sexual abuse." CSAAS is therefore inapplicable in those instances where a victim/witness is knowledgeable and competent to testify.

Evans did not assist the trier of fact in understanding the professed syndrome. Instead, Evans, through speculation and conjecture, reasoned that falsification by a victim/witness in effect establishes the "truth" of the story. The syndrome does not suggest or even hint at this far-fetched extrapolation applied by Evans. Clearly, the misapplication of CSAAS denied appellant a fair trial by impinging on the jury's fact-finding function. Thus, the uncorroborated testimony of the alleged victim bolstered by credibility evaluations of an expert detrimentally prejudiced appellant.

The trier of fact is the final arbiter or determiner of factual controversies. In a jury trial, the jury makes the determinations by weighing the testimony, applying credibility tests, finding the presence or absence of facts constituting the hypothesis, and by drawing its own inferences and conclusions from the legal instructions given. *State v. Whitman* (1984), 16 Ohio App.3d 246, 250, 16 OBR 269, 273, 475 N.E.2d 486, 491, quoting *McKay Machine Co. v. Rodman* (1967), 11 Ohio St.2d 77, 40 O.O.2d 87, 228 N.E.2d 304, paragraph one of the syllabus. Thus, an expert witness is entitled to *assist* a trier of fact in the fact-finding process but may not render opinions as to the veracity or credibility of a material witness. See *State v. Cottrell* (Feb. 19, 1987), Cuyahoga App. No. 51576, unreported, 1987 WL 6799.

In the case *sub judice*, the expert witness was a clinical counselor who testified that appellant's daughter was a sexually abused child. Further, this same "expert" in order to bolster the victim-witness's testimony, maintained that inherent falsities and changes in the events as told by the victim made her account of the incident credible. This testimony, directed toward

the veracity and credibility of the victim, invades the fact-finding function of the jury and, therefore, is not a proper subject for an expert opinion.

The Ohio Supreme Court in a recent decision held that an expert may not testify as to his opinion concerning the veracity of the statements of a child declarant. In *State v. Boston* (1989), 46 Ohio St.3d 108, 545 N.E.2d 1220, the trial court permitted a pediatrician and child psychologist to express their opinions that the victim had not fantasized her abuse and had not been programmed to make accusations against her father. Effectively, this testimony declared the victim-witness truthful and credible. With regard to the testimony of the pediatrician, the court held that its admission into evidence was improper and prejudicial since the veracity and credibility determinations were made by the expert witness rather than by the jury. Further, the court also held that the child psychologist's testimony identifying the defendant as the perpetrator was improper and highly prejudicial based on a complete lack of trustworthiness. The court stated:

" * * * [T]estimony of [the victim's] out-of-court statement which identified appellant as the perpetrator did not meet one of the most important parts of the criteria we have set forth to establish a guarantee of trustworthiness. Up to this point [the expert] had not testified that she had independent evidence that [the victim] had suffered emotional abuse. *Absent such evidence*, [the expert] *should not be permitted to testify as to* [the victim's] *statement that identified appellant as the perpetrator of the alleged abuse.*" (Emphasis added.) *Id.* at 129, 545 N.E.2d at 1240.

 Clearly, a proper foundation must be established prior to the admission of an expert opinion at trial. In addition, an expert may not bolster and/or determine the truthfulness or credibility of a victim-witness in the context of a sexual abuse case.

 In appropriate circumstances, an expert witness may testify that a "very young" victim, *i.e.*, a five-year-old child, manifests signs of "sexual abuse" even though such an opinion is perilously close to rendering a determination that the victim-witness is "telling the truth." However, expert testimony regarding the existence of CSAAS must be limited to the syndrome itself and, therefore, courts must not allow an expert to tell the jury that the victim is believable when the victim states that a particular individual abused her.

 Further, expert testimony on the subject of the "sexual abuse syndrome" must be limited to those infants who are not articulate or competent due to a variety of psychological factors. In the case *sub judice*, such testimony is unnecessary and improper since the victim is a fourteen-year-old

female, perfectly capable of communicating a case of alleged sexual abuse. If permitted, this testimony becomes a subterfuge in the guise of proper expert testimony which this court cannot tolerate since it is the equivalent of allowing an expert to testify as to credibility.

Accordingly, we find that the trial court erred in allowing expert testimony concerning the "child sexual abuse syndrome" and its symptoms. We further hold that use of syndrome testimony in this case was elicited by the prosecution to improperly bolster the credibility of the victim-witness. Therefore, appellant's second assignment of error is well taken, requiring this court to reverse and remand these proceedings for a new trial, based on prejudicial error caused by the prosecution's use of expert testimony.

The judgment is reversed and the cause is remanded.

*Judgment reversed*
*and cause remanded.*

JONES, P.J., concurs.

WILLIAM W. YOUNG, J., concurs in part and dissents in part.

WILLIAM W. YOUNG, Judge, concurring in part and dissenting in part.

I concur in the majority's disposition of the first assignment of error and in the judgment. However, I must write separately to express my concerns with the majority's overreaching condemnation of expert testimony in child sex abuse cases.

In *State v. Boston* (1989), 46 Ohio St.3d 108, 545 N.E.2d 1220, the Ohio Supreme Court approved of the use of properly qualified expert testimony to assist the jury in determining whether sexual abuse occurred in a given case. *Id.* at 128, 545 N.E.2d at 1239. The court reasoned that "[m]ost jurors would not be aware, in their everyday experiences, of how sexually abused children might respond to abuse," and that "the common experience of a juror may represent a less-than-adequate foundation for assessing whether a child has been sexually abused." *Id.* at 128, 545 N.E.2d at 1239.

Relevant clinical and scientific literature discloses that many sexually abused children demonstrate common behavioral, cognitive, and emotional reactions to their abuse. Myers, Child Witness Law and Practice (Supp.1989), Section 4.17C. Thus, the presence of such behaviors or reactions in an alleged victim can be probative of abuse. Granted, some of these behaviors or reactions can be associated with a wide range of psychological problems and are not dispositive of the occurrence of sexual abuse. Evidence need not be dispositive, however, in order to be logically relevant and admissible. Evid.R. 401, 402. Accordingly, I would hold that so long as the probative value of the

testimony in a given case outweighs the danger of unfair prejudice, see Evid.R. 403, a properly qualified expert should be allowed to testify concerning behaviors commonly seen in abused children. Such testimony could then be supplemented by that of persons familiar with the behavior of the alleged victim. It would then be up to the jury to determine whether the alleged victim was in fact abused. Such a role would preserve the vote of the jury as fact-finder and avoid the potentially inconsistent application of the age-based rule proposed by the majority. (What is a "very young victim"?)

The danger, of course, of allowing testimony concerning behavior common to sexually abused children is that such testimony often implicates the credibility of the alleged victim. For example, a common behavioral reaction of an abused child is the fabrication and/or variation of his or her story concerning the alleged abuse. Myers, *supra.* It is all too tempting for the prosecution to put on an expert to testify to the effect that the victim lied and therefore he or she is telling the truth about the alleged abuse. Such testimony is clearly prohibited, however, for it infringes upon the role of the fact-finder, who is charged with making determinations of veracity and credibility. *Boston, supra*, at 128–129, 545 N.E.2d at 1240. The prosecution can avoid this temptation by keeping the expert's testimony focused on general responses of the typical child abuse victim and avoiding testimony which indicates that the specific victim is credible. See *Boston, supra*, at 132, 545 N.E.2d at 1243, fn. 21 (Patton, J., dissenting).

In the present case, the prosecution properly confined its examination of Evans to the general reactions and responses of the typical child abuse victim. The majority quotes testimony of Evans and asserts that she impermissibly bolstered the credibility of the victim. The testimony quoted by the majority, however, has been taken out of context. A review of the record shows that this testimony was in response to a hypothetical question about an allegedly abused child. Thus, Evans's testimony did not represent an opinion as to the credibility of the particular victim in this case. The only victim-specific testimony concerning credibility occurred during the cross-examination of Evans by defense counsel. Accordingly, I would find Evans's testimony to be admissible.