DECISION AND JUDGMENT ENTRY
This is an appeal from a judgment of the Lucas County Court of Common Pleas which, following a jury trial, found appellant, Maximino Macias, Jr., guilty of rape and sentenced him to a term of six years. For the reasons stated herein, this court affirms the judgment of the trial court.
Appellant sets forth the following five assignments of error:
"FIRST ASSIGNMENT OF ERROR:
 "The trial court erred in failing to grant Appellant's request for new appointed counsel, which request was made almost a month prior to trial and which the court made less than perfunctory inquiry into, thus violating Appellant's state and federal constitutional rights to due process of law and the effective assistance of counsel.
"SECOND ASSIGNMENT OF ERROR:
 "The bolstering of the complaining witness's credibility through improper testimony and closing argument comprised prosecutorial misconduct that unconstitutionally usurped the jury's province as factfinder and deprived Appellant of his state and federal constitutional rights to due process of the law. Defense counsel's failure in part to object to this misconduct deprived Appellant of his state and federal constitutional rights to the effective assistance of trial counsel.
"THIRD ASSIGNMENT OF ERROR:
 "The trial court erred in failing to enter, post-verdict, a judgment of acquittal under Criminal Rule 29, thus depriving Appellant of his state and federal constitutional rights to due process of the law, and defense counsel was ineffective in his representation of Appellant for his failure to request such a ruling after the verdict, thus depriving Appellant of his state and federal constitutional rights to the effective assistance of trial counsel.
"FOURTH ASSIGNMENT OF ERROR:
 "Appellant's conviction was against the manifest weight of the evidence, thus depriving him of his fundamental right to a fair trial under the state and federal constitutions.
"FIFTH ASSIGNMENT OF ERROR:
 "The trial court erred in denying Appellant's motion for a new trial without holding an evidentiary hearing. It was also error for a judge who did not preside over the trial to make that decision. These errors deprived Appellant of his state and federal constitutional rights to due process of the law."
The following facts are relevant to this appeal. Appellant was indicted on September 3, 1998 on one charge of rape, in violation of R.C.2907.02(A)(2). Appellant entered a plea of not guilty at his arraignment.
Appellant's two day trial began on March 2, 1999. The victim, a police detective, a social worker and a nurse all testified in the state's case in chief.
At trial, Mary[1], the fourteen year old complaining witness, testified that appellant was a friend of her father. The victim, who has lived in foster care because her mother has a drug problem, testified that on June 27, 1998, while on a visit with her mother, she and her mother went to appellant's house located in Toledo, Ohio between 12 noon and 6:00 p.m. Her mother left to go to the grocery store and Mary watched television. Appellant came into the room and sat beside her and watched television. After a time, appellant began to kiss her cheek. Mary testified that then appellant got up and pulled down his pants, got on top of her and pulled down her pants. Mary testified that she was crying and tried to push him off. She testified that appellant raped her after which she went into the bathroom and remained there until her mother returned. Mary testified that she told her mother but her mother did not take her to the hospital or call the police. Mary testified she twice paged a caseworker that Mary knew through a school pregnancy prevention program entitled "Incentives for Excellence" but did not receive a telephone call from the case worker until Monday. Mary had participated in this program since the sixth grade.
Detective Denise Knight, a Toledo police liaison officer with the Lucas County Children Services ("LCCS") whose responsibilities include investigation of all alleged juveniles' sexual abuse cases, testified as to her investigation in the case sub judice. Knight testified that she was contacted by an LCCS caseworker and interviewed Mary on July 1, 1998. Knight testified that most times children are reluctant to report cases of sexual abuse. Knight also testified that no one in Mary's family knew where Mary's mother lived and that Knight was never able to contact Mary's mother although Knight attempted to do so. Melissa Walker, the caseworker in a school pregnancy prevention program entitled "Incentives for Excellence" ("program") whom Mary contacted, testified. Walker testified that she had known Mary since March 1997, and had seen her on a twice weekly basis during class and additionally once every two to three weeks after school. Walker considered Mary an excellent student, a very well-behaved teenager, one of the best participants in the program as well as a role model and leader. Walker testified that she received two messages from Mary on Sunday, June 28, 1998. However, Mary was crying, her voice quivering and her words inaudible so that Walker was unable to hear a telephone number and, thus, unable contact Mary although Walker knew it was Mary. Walker testified that Mary paged her again on Monday and they spoke on that day. As a result of that conversation, Walker contacted Mary's LCCS caseworker.
Linda Lewin, a clinical nurse specialist at the Medical College of Ohio child abuse clinic ("MCO") and a nursing school faculty member, testified in regard to her physical examination of Mary on July 7, 1998. Lewin testified that during her digital palpation of Mary's hymen, Lewin encountered a discontinuity, which was in contrast to the very regular margin of the hymen of a female who has not yet had some form of sexual penetration.
At the close of the state's case, appellant moved for acquittal pursuant to Crim.R. 29. The motion was denied. The defense presented its case.
Julie Robeson, office manager at appellant's place of employment, Olympic Pool and Spa ("Olympic"), testified that appellant worked from 9:08 a.m. to 8:04 p.m. on June 27, 1998. Robeson testified that she was responsible for records, including employee weekly time cards used to track the time the employee is working. Robeson testified that copies of two different spa purchase agreements indicated that appellant delivered two spas on June 27, 1998, one in Maumee and another in Tiffin. Robeson also testified that another employee, Kevin Willet, worked from 7:58 a.m. to 12:30 p.m. on June 27, 1998. On cross-examination, Robeson admitted that she was not with appellant or Willet on
June 27, 1998; that the employee time card did not reflect appellant's comings and goings between 9:08 a.m. to 8:04 p.m.; that appellant is not required to provide his moment-to-moment whereabouts to her; and that she would have no way of knowing whether or not he went home or sat at McDonald's for two hours or where appellant went. Robeson also testified that Willet worked for Olympic after 12:30 p.m. on June 27, 1998, and was paid for each spa delivered.
Willet testified that he is a seasonal worker for Olympic. He also testified that he worked on the clock until 12:30 p.m. on June 27, 1998, and met appellant as he was walking into the Olympic office. Willet also testified that he and appellant were together from 12:32 p.m. for the rest of the day delivering spas. He testified that he and appellant made two non-work related stops, including one at appellant's home but that appellant and another man were in appellant's home at approximately 3:45 p.m. for three minutes at the maximum. On cross-examination, Willet testified that he remembered the events of June 27, 1998, in such detail because he normally does not deliver spas and the two on that day were the only two he delivered all year. He also testified that he was certain of the time he met appellant that day because he had just punched out and had seen the time, then left the office and met appellant in the parking lot and walked back into the office with appellant and saw the clock again. Willet admitted that he told Knight that he refused to talk with her until he talked to appellant's attorney; Willet stated that he did not want to talk with her without an attorney because officers plan on twisting things around to get you to say things that are not true. Willet also admitted that on June 25, 1992, he had entered a guilty plea to a charge of breaking and entering and served some time in prison as a result. He admitted that he and appellant were friends.
Olympic customers to whom appellant had delivered spas on June 27, 1998, testified. A couple from Tiffin both testified that their spa was delivered by appellant and Willet on June 27, 1998. The wife remembered there had been tornado warnings that day. She called her husband because his help was needed with the spa; she produced her telephone bill which listed the time of that telephone call as 5:51 p.m. She testified that it takes approximately forty-five minutes to one hour to drive from Tiffin to Toledo. On cross-examination, she testified that appellant and Willet arrived after 5:30 p.m. Her husband also testified that she called him approximately 5:50 p.m. He testified that the men were at their house approximately forty-five minutes. The Maumee customer testified that his spa was delivered by appellant on June 27, 1998, mid to late afternoon, between 2:00 p.m. and 3:00 p.m. On cross-examination, he testified that appellant arrived at approximately 2:30 p.m. to 3:00 p.m., although he admitted it could have been later.
At the close of testimony, the motion for acquittal was renewed and overruled.
The jury returned a guilty verdict on the offense of rape. On March 16, 1999, appellant filed pro se a motion for a new trial. Trial counsel moved for leave to withdraw as counsel which the trial court granted.[2]
Appellant was sentenced to a definite term of six years on Mary 28, 1999. At a sexual classification hearing on May 13, 1999, the trial court found appellant to be a sexually oriented offender.
On November 9, 1999, appellant, through appointed counsel, filed a motion for leave to file a delayed appeal. The motion was granted by this court on November 18, 1999.
In his first assignment of error, appellant argues that the trial court erred in failing to grant appellant's request for new appointed counsel and also argues that the trial court made less than a perfunctory inquiry into appellant's request. This court finds no merit in this assignment of error.
At a February 9, 1999 pretrial hearing, appellant told his then appointed counsel that he wanted new counsel and his appointed counsel informed the trial court. The trial court inquired of appellant his reason for wanting new counsel. Appellant explained that he had discussed with his counsel the day before the hearing that his counsel would file a motion to dismiss in another case on speedy trial grounds and appellant was unhappy because his counsel had not filed the motion that day.
The trial court explained that counsel was in charge of trial tactics and denied appellant's request. Appellant relies on State v. Prater (1990),71 Ohio App.3d 78, in support of this assignment of error.
In Prater, the trial court did not inquire of the defendant as to why he wanted new counsel, and the appellate court stated:
 "* * * Instead of holding a hearing or asking a few questions, the court denied defendant new counsel based on the court's personal knowledge of the reputation, competence and performance of this defense counsel in other cases.
 "On the particular facts of this case, the trial court breached its duty to inquire. The investigation required may be brief and minimal. (Citation omitted.) The inquiry, however, must be made and put on the record under Deal, supra." Id. at 83.
In State v. Deal (1969), 17 Ohio St.2d 17, syllabus, the Ohio Supreme Court held:
 "Where, during the course of his trial for a serious crime, an indigent accused questions the effectiveness and adequacy of assigned counsel, by stating that such counsel failed to file seasonably a notice of alibi or to subpoena witnesses in support thereof even though requested to do so by accused, it is the duty of the trial judge to inquire into the complaint and make such inquiry a part of the record. The trial judge may then require the trial to proceed with assigned counsel participating if the complaint is not substantiated or is unreasonable."
In the case sub judice, the trial court did inquire and placed his inquiry of appellant's complaint on the record. Thus, the trial judge did not breach his duty to inquire and to place such inquiry on the record. The trial judge, having determined that when to file a motion was a matter within the trial tactics of counsel, proceeded with trial.
Accordingly, appellant's first assignment of error is found not well-taken.
In his second assignment of error, appellant sets forth three arguments. Appellant first argues that the state improperly bolstered the credibility of the victim through the detective's testimony regarding child sexual abuse accommodation syndrome ("CSAAS"). Appellant next argues that his trial counsel was ineffective in failing to object to the detective's testimony regarding CSAAS. Appellant also argues that the state committed prosecutorial misconduct during closing argument. This court finds no merit in this assignment of error.
In regard to appellant's first argument, appellant argues that Knight stated several times that Mary's testimony was believable even though she did not report the rape immediately. However, a review of the trial transcript demonstrates that Knight did not state "several times that Mary's testimony was believable even though she did not report the rape immediately."
Knight did testify that most times children are reluctant to report cases of sexual abuse.
This court agrees with appellant's argument that an expert may not provide opinion testimony regarding the truth of a witness' statements or testimony. State v. Stowers (1998), 81 Ohio St.3d 260, 262; State v.Moreland (1990), 50 Ohio St.3d 58, 62. However, as stated in State v.Stowers, 81 Ohio St.3d at 262-63:
 "Boston's syllabus excludes expert testimony offering an opinion as to the truth of a child's statements (e.g., the child does or does not appear to be fantasizing or to have been programmed, or is or is not truthful in accusing a particular person). It does not proscribe testimony which is additional support for the truth of the facts testified to by the child, or which assists the fact finder in assessing the child's veracity. (Emphasis in original.)"
Assessing a witness's veracity is within the province of the trier of fact. State v. Jones (1996), 114 Ohio App.3d 306, 318.
Thus, an expert may provide testimony assisting the trier of fact in assessing a witness's credibility. Stowers, supra, at 263. In State v.Thompson (Dec. 29, 1989), Montgomery App. No 11262, unreported, the appellate court found no error in an expert's general testimony about why victims of sexual abuse do not come forward immediately and why they recant their stories. The appellate court found the testimony proper despite the fact that the victim-witness exhibited some of the same behaviors about which the expert testified, noting that the expert did not provide an opinion about the witness's truthfulness. The court also noted that the expert's testimony "was limited to the general behavior of children who have been abused." In Stowers, the Ohio Supreme Court found nothing improper in an expert's testimony explaining why children who have been sexually abused often recant their accusations and delay disclosure of the abuse. Stowers, supra, at 263. The court noted that the expert did not provide an opinion concerning her belief in the child-witness's statements. Rather, she provided the jury with information to help it make an educated determination and "counterbalanced the trier of fact's natural tendency to assess recantation and delayed disclosure as weighing against the believability and truthfulness of the witness." Id.
In the case sub judice, Knight's testimony did not bolster Mary's testimony. Knight merely testified that delay in reporting sexual abuse in not uncommon with children. Knight never vouched for Mary's credibility or indicated that her testimony was truthful. See, Stowers. Knight did not testify that Mary fit the pattern of an abused victim, or did she otherwise use the "syndrome" as evidence that Mary was telling the truth. See, State v. Davis (1989), 64 Ohio App.3d 334, 345.
Appellant's argument is based upon case law which is distinguishable from the factual scenario in the case sub judice. The cases cited involved experts who had examined or counseled the alleged victims and/or were attempting to bolster their credibility. For example, in Davis,64 Ohio App.3d at 340-342, the expert interviewed the child and gave an opinion that the alleged sexual abuse had occurred. In State v. Price
(1992), 80 Ohio App.3d 35, 42, an expert witness testified about patterns found in child sexual abuse cases and the symptoms of post-traumatic stress syndrome. The expert reached no conclusion regarding whether or not the victim had been sexually abused. Id. However, the appellate court, noting the absence in the record disclosing a legitimate purpose for the testimony, found that the purpose of the expert's testimony was to bolster or strengthen the testimony of the alleged victim. Id.
This was not the case here. Knight never diagnosed CSAAS as applying in this case, never attempted to make any determination that sexual abuse actually occurred and never tried to bolster Mary's credibility. Appellant has failed to demonstrate that the trial court incorrectly received this evidence.
Appellant's second argument in this assignment of error is that his trial counsel's failure to object to Knight's testimony amounted to ineffective assistance of counsel. This court finds no merit in this argument.
The standard for determining whether a trial attorney was ineffective requires appellant to show: (1) that the trial attorney made errors so egregious that the trial attorney was not functioning as the "counsel" guaranteed appellant under the Sixth Amendment, and (2) that the deficient performance prejudiced appellant's defense. Strickland v.Washington (1984), 466 U.S. 668, 686-687. In essence, appellant must show that his trial, due to his attorney's ineffectiveness, was so demonstrably unfair that there is a reasonable probability that the result would have been different absent his attorney's deficient performance. Id. at 693.
Having found admissible the testimony which forms the basis of appellant's ineffective assistance of counsel claim, this court cannot say that appellant's trial counsel was ineffective in failing to object to the admission of the testimony. This court concludes, on the state of this record, that appellant has failed to demonstrate that his trial attorney's conduct in failing to object to this testimony was either ineffective or prejudicial.
Appellant's last argument in his second assignment of error is that of prosecutorial misconduct in closing argument. Specifically, appellant argues that the prosecutor's closing argument was inflammatory.
As this court stated in State v. Burke (May 12, 2000), Lucas App. Nos. L-98-1165, L-98-1166, unreported:
 "* * * Prosecutors are entitled to wide latitude during closing arguments. (Citation omitted.) Generally, conduct of a prosecuting attorney at trial shall not be grounds for reversal unless the conduct deprives the defendant of a fair trial. (Citations omitted.) An appellant is entitled to a new trial only when a prosecutor asks improper questions or makes improper remarks and those questions or remarks substantially prejudiced appellant. (Citation omitted.) In analyzing whether an appellant was deprived of a fair trial, an appellate court must determine whether, absent the improper questions or remarks, the jury would have found the appellant guilty. (Citations omitted.) The touchstone of due process analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor. (Citation omitted.) An accused is guaranteed a fair trial, not a perfect one.
 "Generally, the state may comment freely on `what the evidence has shown and what reasonable inferences may be drawn therefrom.' (Citations omitted.) However, prosecutors may not invade the realm of the jury by, for example, rendering their personal beliefs regarding guilt and credibility, or alluding to matters outside of the record. (Citations omitted.)"
This court has reviewed the prosecutor's closing argument in light of the arguments raised by appellant and finds appellant's argument unconvincing.
Accordingly, appellant's second assignment of error is found not well-taken.
This court will next address appellant's fourth assignment of error. In this assignment of error, appellant argues that his conviction was against the manifest weight of the evidence. This court finds no merit in this assignment of error.
In State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus, the Supreme Court of Ohio stated:
 "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt."
In State v. Thompkins (1997), 78 Ohio St.3d 380, 386, the Ohio Supreme Court stated that "[t]he legal concepts of sufficiency of the evidence and weight of the evidence are both quantitatively and qualitatively different." The court also noted:
 "In essence, sufficiency is a test of adequacy. Whether the evidence is legally sufficient to sustain a verdict is a question of law." Id.
In contrast to sufficiency, the court stated the following in regard to weight of the evidence:
 "* * * Weight of the evidence concerns `the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the greater amount of credible evidence
sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on its effect in inducing belief.'" (Citation omitted.) (Emphasis added by Court.) Id. at 387.
The Ohio Supreme Court also noted that when an appellate court reverses a verdict as against the weight of the evidence, the appellate court sits as a "thirteenth juror" and disagrees with the fact finder's resolution of the conflicting testimony. Id.
Appellant argues that Mary's testimony was less credible than that of his alibi witnesses and that there was no time frame unaccounted for by his alibi witnesses that fit into the time frame provided by her story. As a general rule, the weight to be given the evidence and the credibility of witnesses are primarily for the trier of fact to decide.State v. DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus. The trier of fact is not required to believe any witness. The credibility of witnesses is within the province of the trier of fact. The trier of fact is entitled to believe or disbelieve the testimony of either the state's witnesses and/or the defendant's witnesses. State v.Harriston (1989), 63 Ohio App.3d 58, 63. In this case, the jury was clearly within its discretion to disbelieve the testimony of any witness. A reviewing court will not reverse the verdict of the trial court where there is substantial evidence upon which the trier of fact could reasonably conclude that all the elements of an offense had been proven. State v. Eley (1978), 56 Ohio St.2d 169, syllabus.
After reviewing the record, this court concludes that any rational trier of fact could have found that the essential elements of rape were proven beyond a reasonable doubt. Accordingly, appellant's fourth assignment of error is found not well-taken.
In his third assignment of error, appellant argues that the trial court erred in failing to enter a judgment of acquittal post-verdict and that his trial counsel's failure to request such a ruling amounted to ineffective assistance of counsel. Appellant argues that the trial court erred in failing either to reserve decision on the motion for judgment on acquittal made at the close of all the evidence or to set a time period within two weeks after the verdict for the motion to be renewed. This court finds no merit in this assignment of error.
Crim.R. 29(C)[3] permits a trial court, upon motion, to set aside a guilty verdict and enter a judgment of acquittal. A motion for acquittal will be sustained if the evidence presented is insufficient as a matter of law to permit a conviction. Crim.R. 29(A)[4]; State v. Pickett
(1996), 108 Ohio App.3d 312, 314. The trial court applies the same standard in ruling on motions for acquittal presented either at trial or made after judgment pursuant to Crim.R. 29(C). State v. Miley (1996),114 Ohio App.3d 738. "'[S]ufficiency' is a term of art meaning that no legal standard which is applied to determine whether the case may go to the jury or whether the evidence is legally sufficient to support the jury verdict as a matter of law. (Citation omitted.)" State v.Thompkins (1997), 78 Ohio St.3d 380, 386. "In essence, sufficiency is a test of adequacy." Id. Whether the evidence presented in a case is legally sufficient to sustain a verdict is a question of law and a conviction based upon legally insuf-ficient evidence constitutes a denial of due process. Id. "On review for sufficiency, courts are to assess not whether the state's evidence is to be believed, but whether, if believed, the evidence against a defendant would support a conviction."Id. at 390 (Cook, J., concurring). A judgment of acquittal is inappropriate "if the evidence is such that reasonable minds can reach different conclusions as to whether each material element of a crime has been proved beyond a reasonable doubt." State v. Bridgeman (1978),55 Ohio St.2d 261, syllabus.
An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus. Stated in other words: "An appellate court *** will not reverse the trial court's judgment unless reasonable minds could only reach the conclusion that the evidence failed to prove all elements of the crime beyond a reasonable doubt." State v. Miley (1996),114 Ohio App.3d 738, 743. When an appellate court reviews a trial court's decision regarding a motion for acquittal, the appellate court must construe the evidence in a light most favorable to the state. Statev. Fyffe (1990), 67 Ohio App.3d 608, 613; State v. Wolfe (1988),51 Ohio App.3d 215, 216. Further, upon appellate review, the court may not substitute its judgment for the trier of fact on issues as to the credibility of witness testimony. State v. Walker (1978),55 Ohio St.2d 208, 212.
Obviously, the jury chose to believe Mary and the other witnesses for the state and not to believe appellant's witnesses.
This court may not substitute its judgment for the trier of fact on issues as to the credibility of witness testimony. Walker, Id. This court can not "reverse the trial court's judgment unless reasonable minds could only reach the conclusion that the evidence failed to prove all elements of the crime beyond a reasonable doubt." State v. Miley,114 Ohio App.3d at 743. Upon review of the record in this case, this court does not find that the trial court erred in failing to enter a judgment of acquittal.
In order for appellant to prevail on a claim of ineffective assistance of counsel, he must show that his counsel made errors so serious that his counsel was not functioning as "counsel" at all and, further, that appellant was prejudiced by those errors. Strickland v. Washington
(1984), 466 U.S. 668. Failure to move for acquittal after the jury verdict was rendered is not grounds for reversal for ineffective assistance of counsel. Two Crim.R. 29(C) motions had already been made and overruled. Having found that the trial court did not err in failing to enter a judgment of acquittal, this court cannot say that appellant's trial counsel was ineffective in failing to move for acquittal after the jury verdict was rendered. This court concludes, on the state of this record, that appellant has failed to demonstrate his trial attorney's conduct in failing to move for acquittal after the jury verdict was rendered was either ineffective or prejudicial.
Accordingly, appellant's third assignment of error is found not well-taken.
In his fifth assignment of error, appellant argues that the trial court erred in denying appellant's motion for a new trial without holding an evidentiary hearing. Appellant also argues that it was error for a judge who did not preside over the trial to deny appellant's motion for a new trial. This court finds no merit in this assignment of error.
This court will first address appellant's argument that the trial court erred in denying appellant's motion for a new trial without holding an evidentiary hearing. Appellant filed a motion for a new trial pro se. At appellant's sexual classification hearing, appellant asked for time to speak with his new counsel about this motion. The visiting judge who presided over appellant's trial told appellant's new counsel that if he wanted a hearing on this matter to have it set when the visiting judge would be back. The visiting judge specified the days he would be available. Upon review of the record, there is no request for an evidentiary hearing. Thus, the trial court did not err in denying appellant's motion for a new trial without holding an evidentiary hearing.
Appellant also argues that it was error for a judge who did not preside over the trial to deny appellant's motion for a new trial. However, close examination of the record demonstrates that, although a different judge's name is typed on the order denying appellant's motion for a new trial, the signature is that of the visiting judge who presided over appellant's trial.
Accordingly, appellant's fifth assignment of error is found not well-taken.
On consideration whereof, the court finds that the defendant was not prejudiced or prevented from having a fair trial, and the judgment of the Lucas County Court of Common Pleas is affirmed. It is ordered that appellant pay court costs for this appeal.
Peter M. Handwork, J., Melvin L. Resnick, J., CONCUR.
[1] Victim's name has been changed to protect her identity.
[2] During the course of this case, appellant has had several different attorneys. At arraignment, appellant had retained counsel who was granted leave to withdraw in January 1999. The trial court appointed counsel who represented appellant until March 1999 when he was granted leave to withdraw. Two new attorneys, retained by appellant, entered an appearance on March 22, 1999; these attorneys moved for leave to withdraw on June 8, 1999.
[3] Crim.R. 29(C) provides, in pertinent part:
 "If a jury returns a verdict of guilty or is discharged without having returned a verdict, a motion for judgment of acquittal may be made or renewed within fourteen days after the jury is discharged or within such further time as the court may fix during the fourteen day period. If a verdict of guilty is returned, the court may on such motion set aside the verdict and enter judgment of acquittal."
[4] Crim.R. 29(A) states that the trial court shall enter a judgment of acquittal "if the evidence is insufficient to sustain a conviction of such offense or offenses."
 _____________________ HANDWORK, J., Judge
James R. Sherck, J., dissents.